**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>v.<br><br>THE EQUIVALENT VALUE OF USDT, OR TETHER, AS CURRENTLY ASSOCIATED WITH TETHER WALLET ADDRESS BEGINNING WITH TYpBRq,<br>*Defendant*. | No. 25-cv-1770 (VAB) |

**RULING ON MOTION FOR DEFAULT JUDGMENT**

The United States of America (the "Government") filed a Verified Complaint of Forfeiture against Equivalent Value of USDT, or Tether ("Tether" or "Defendant"). Compl., ECF No. 1 ("Compl."), arising out of a civil in rem action brought to enforce the provisions of 18 U.S.C. §§ 1343 & 1956.

On December 22, 2025, the Government moved for default entry against Tether for its failure to file a claim, answer, or otherwise defend against this action. Mot. for Default Entry 55(a), ECF No. 11. On April 3, 2026, the Government moved for default judgment. Mot. for Default J., ECF No. 13 ("Mot.").

On November 5, 2026, the Court held a hearing on the motion for default judgment. *See* Min. Entry, ECF No. 16.

For the following reasons, the Court **GRANTS** the motion for default judgment in favor of the Government.

A separate default judgment order and decree of forfeiture shall follow this ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTUAL ALLEGATIONS

On May 27, 2025, law enforcement learned of a cryptocurrency fraud related incident in which a Connecticut resident, "F.H.," had been victimized. Compl. ¶ 5.

F.H was contacted by an individual named "Luna Jones" on the social media website, Facebook, who tried to entice F.H. with a cryptocurrency investment opportunity. Compl. ¶¶ 7-8. Luna Joes directed F.H. to an alleged investment platform, "Loopring.cc," which was available in the Apple application store. Compl. ¶ 8. Luna Jones falsely represented to F.H. that she was making "great returns" and offered to show F.H. how to trade on the platform. Compl. ¶ 9. Ms. Jones instructed F.H. to set up a Coinbase account to convert the money into cryptocurrency so that he could invest it on Loopring.cc. *Id*. F.H. purchased "USD Coin ("USDC") on Coinbase, a cryptocurrency coin that is "designed to track a 1:1 value ration with the U.S. Dollar," and he was further instructed to send funds to a deposit address on Loopring.cc. Compl. ¶ 10.

From April 24, 2025 to May 20, 2025, "F. H. sent a total 427,792 USDC from his Coinbase wallet to Wallet 0x231E, a value of $427,776.11 at the time of the transfer." Compl. ¶ 11. After Ms. Jones sent a photo that did not match her Facebook profile picture, F.H. started to become suspicious and attempted to withdraw his funds from Loopring.cc, but he was unable to. Compl. ¶ 13. Then, Loopring.cc flagged his account for illegal activity because his investment partner had sent her funds onto the platform from a different exchange, and messaged him that his account would remain locked until he re-deposited the entirety of her funds (approximately $328,000) from his Coinbase wallet. *Id*. At this point, F.H. realized that he had been scammed by Ms. Jones. Compl. ¶ 14.

Using multiple complaints filed by multiple victims, including F.H., law enforcement

performed a blockchain analysis and were able to trace the funds to three addresses associated with Luna Jones's Wallet. Compl. ¶¶ 15-16.

### B. PROCEDURAL BACKGROUND

On October 21, 2025, the Government filed its Complaint bringing a civil in rem action to enforce the provisions of 18 U.S.C. §§ 1343 and 1956.

Defendants did not file an appearance or response.

On December 22, 2025, the Government moved for default entry under Rulle 55(a) of the Federal Rules of Civil Procedure. Mot. for Default Entry, ECF No. 11 (December 22, 2025).

On April 2, 2026, the Court granted the Government's motion for default entry against the Defendant. Order, ECF No. 12 (April 2, 2026).

On April 3, 2026, the Government moved for default judgment against Defendant "pursuant to Rule 55(a) of the Federal Rules of Civil Procedure against Claimant Tether as to all assets for the failure to file a claim, or answer, or otherwise defend in this action as provided for in Rule G(5)(a)(ii)(A) of the Supplemental Rules for Certain Admiralty and Maritime Claims." Mot. for Default Entry, ECF No. 11 (December 22, 2025).

On November 5, 2026, the Court held a hearing on the motion for default judgment. *See* Min. Entry, ECF No. 16.

## II. STANDARD OF REVIEW

### A. Rule 55

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). Plaintiffs must first obtain an entry of default under Rule 55(a), by showing that the defaulting party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). "Once default has been

entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages." *Coles v. Lieberman, Michaels & Kelly, LLC*, No. 10-CV-484S, 2011 WL 3176467, at *1 (W.D.N.Y. July 27, 2011) (citation omitted); *see also Transatlantic Marine*, 109 F.3d at 108 ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.") (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.")).

The second step is to seek a default judgment under Rule 55(b). "Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear." *Priestley*, 647 F.3d at 505. "In all other cases Rule 55(b)(2) governs. It requires a party seeking a judgment by default to apply to the court for entry of a default judgment." *Id.* Under Rule 55(b)(2), a court must determine whether liability is appropriate, based on the facts alleged in the complaint. *Coles*, 2011 WL 3176467, at *1 (citation ommitted); *accord United States v. Bunbury*, 15-CV-3764(JS), 2015 WL 9050581, at *1 (E.D.N.Y. Dec. 15, 2015) ("[I]n determining a motion for default judgment, the Court is responsible for ensuring that the pleadings provide an appropriate basis for liability.") (citing *United States v. Kemp*, No. 15-cv-02419 PKC, 2015 WL 6620624, at *2 (E.D.N.Y. Oct. 30, 2015)). A court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: [ ] conduct an accounting; [ ] determine the amount of damages; [ ] establish the truth of any allegation by evidence; or [ ] investigate any other matter." Fed. R. Civ. P. 55(b)(2).

**B. Forfeiture in Rem**

"In rem forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 20000," 18 US.C. § 981 et seq. *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). "The Federal Rules of Civil Procedure also apply to [forfeiture in rem] proceedings except to the extent that they are inconsistent with the[] Supplemental Rules." Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-cv-5567, 2015 U.S. Dist. LEXIS 117692 at *4 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017).

Under Supplemental Rule G, a complaint for forfeiture in rem must:

(a) Be verified;

(b) State the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;

(c) Describe the property with reasonable particularity;

(d) If the property is tangible, state its location when any seizure occurred and – if different – its location when the action is filed;

(e) Identify the statute under which the forfeiture action is brought; and

(f) State sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2). Furthermore, "[i]f the defendant is not real property…the clerk must issue a warrant to arrest the property if it is in the government's possession custody, or control." Supp. R. G(3)(b)(i).

Supplemental Rule G(4) sets forth the notice requirements for forfeiture in rem actions: the government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government," Supp. R. G(4)(b)(i), and notice by publication, which is required unless certain conditions are met, can be effectuated by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days," Supp. R. G(4)(a)(iv)(C).

Once the government has commenced a forfeiture in rem action, a claimant "who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d at 197. The claimant must file their claim "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint." *See* 18 U.S.C. § 983(a)(4)(A); *accord* Supp. R. G(5)(a)(ii). "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supp. R. G(5)(b). However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

## III. DISCUSSION

The Government seeks forfeiture of the Defendant's cryptocurrency wallet which has an address beginning with TYpBRq (hereinafter, "Defendant Assets").

**A. Rule 55**

As an initial matter, the Court must determine whether the Government has complied with the procedural requirements for obtaining default judgment under Rule 55 of the Federal Rules of Civil Procedure. The Government has satisfied Rule 55(a) as the Clerk of Court entered an order granting the motion for default entry on April 2, 2026, which is still in effect. *See* Order Granting Motion for Default Entry, ECF No. 12; *see also Priestley*, 647 F.3d at 504–05 ("When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention. In such circumstances Rule 55(a) empowers the clerk of [the] court to enter a default judgment."). Next, under Rule 55(b)(2) for a party seeking a judgment by default, the Court must ensure that the party has provided "a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (holding that courts have discretion under rule 55(b)(2) "to require proof of necessary facts," but do not need to agree that those facts provide a basis for liability.)). In reviewing Tether's alleged liability, this Court must "accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor, but it is also required to determine whether [the plaintiff's] allegations establish [the defaulting defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). For each of the statutes under which the Government has brought claims, the Court will address whether or not they have provided such a basis in the following sections.

Additionally, because the Government brought this action for forfeiture in rem, the Court must also determine whether the Government complied with the requirements of the Supplemental Rules. *See Vazquez-Alvarez*, 760 F.3d at 197.

The Court will address each of the requirements in turn.

First, the complaint in a forfeiture action in rem must be verified, state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue, describe the property with reasonable particularity, state the location of the property, if tangible, and if different its location when the action is filed, identify the statute under which the forfeiture action is brought, and state sufficiently detailed facts to support a reasonable belief that the government will be able to meets its burden of proof at trial. Fed. R. Civ. P. Supp. R. G(2)(a)-(f).

Second, there is a specific judicial authorization process required. Under Supplemental Rule G(3), "[i]f the defendant is not real property, the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Supp. R. G(3)(b)(i).

Third, before a default judgment is entered, the Government must show that it complied with the requisite notice requirements. Supplemental Rule G(4) requires the government to provide two forms of notice: notice by publication and notice to known potential claimants.

The Government argues that all of the requisite procedural requirements have been met.

The Court agrees.

The Government has filed a Verified Complaint, which states the appropriate bases for jurisdiction and venue, Compl. ¶ 2, and describes the Defendant Property in reasonable detail, including by specific reference to the cryptocurrency wallet address, *id.* ¶ 3. The Verified Complaint identifies the statutes under which the action is brought, *see id.* ¶ 1, and identifies the general location of the Defendant Assets, *id.* ¶ 4. The Verified Complaint also provides sufficient

facts to support a belief that the government could meet its burden of proof if this case were to go to trial. The Government alleges that they learned of a cryptocurrency fraud related incident, where a Connecticut resident was victimized. *Id.* ¶ 5. The Government further alleges that the perpetrator of the fraud falsely represented that they were getting substantial returns through a cryptocurrency investment opportunity. *Id.* ¶¶ 8-9. Next, they allege that from April 2025 to May 2025, the victim was defrauded of over $425,000. *Id.* ¶ 11. And law enforcement was allegedly able to trace the funds of this victim, and others, back to three cryptocurrency wallet addresses associated with the alleged perpetrator. *Id.* ¶¶ 15-20.

In sum, the scheme detailed in the Government's Verified Complaint provides information about wire fraud and money laundering. The allegations support a reasonable belief that the Government would be able to prove that the Defendant Assets are traceable to wire fraud and money laundering, rendering it forfeitable under the applicable statutes. *See United States v. Approximately Five Hundred Forty-One Thousand Nine Hundred Fifty-Three Dollars*, 2025 U.S. Dist. LEXIS 23766 at *10-11 (E.D.N.Y. Feb. 10, 2025) (finding that a Verified Complaint describing a fraudulent scheme pretending to offer investment opportunities in cryptocurrency which induced victims to wire funds to fraudulent investment platforms states "sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial.")

The Government also has satisfied the requirements of Supplemental Rule G(3). On December 5, 2025, in compliance with Supplemental Rule G(3)(b)(i), the Clerk of Court issued a warrant to arrest Tether's property. Mot. for Issuance of Warrant in rem, ECF No. 10; *see also*, *United States v. 674, 739.480211 USDT of Tether Cryptocurrency*, 2026 U.S. Dist. LEXIS

42940 at *13 (N.D.N.Y Mar. 3, 2026) (finding that issuing a warrant to arrest Defendant cryptocurrency is sufficient to be in compliance with Supplemental Rule G(3)(b)(i)).

Third and finally, the Government has satisfied its notice requirements. First, the Government "published notice of the action within a reasonable time after filing the complaint," Fed. R. Civ. P. Supp. R. G(4)(a)(i), "on an official government forfeiture site for at least 30 consecutive days." *Id.* at (G)(4)(a)(iii)(B), (iv)(C); Mot. for Default J. at 2 ("publication of notice of the forfeiture action against the Defendant Assets was performed on the United States government forfeiture website (www.forfeiture.gov) for a period of thirty (30) days, commencing on October 22, 2025 to November 20, 2025."). Second, the Government has represented that "notice of the Verified Complaint for Forfeiture and accompanying documents was electronically mailed to Claimant Tether, as well as any other third parties with a potential interest in the Defendant Assets." *Id.* at 3. Since publishing their notice, no claims or answers were filed within the time permitted by the Supplemental Rules. Based on these available representations, the Court finds that both of the notice requirements are satisfied here. *See United Approximately Five Hundred Forty-One Thousand Nine Hundred Fifty-Three Dollars*, 2025 U.S. Dist. LEXIS 23766 at *9 (finding that publication on the official government forfeiture website and sending direct notice of the action to potential claimants is sufficient to satisfy the notice requirements under Supplemental Rule G(4)).

Accordingly, the Government's Verified Complaint satisfies all of the necessary procedural requirements.

**B. Forfeiture Under 18 U.S.C. § 1343 and Under 18 U.S.C. § 1956**

Under 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property," is "subject to forfeiture to the United States." The Second Circuit has "affirmed forfeiture of property as 'involved in' money laundering transactions when it has 'served as a conduit for the proceeds of the illegal transactions.'" *In re 650 Fifth Ave. & Related Props.*, 777 F. Supp. 2d 529, 563 (S.D.N.Y. 2011) (citing *United States v. Schlesinger*, 261 F. App'x 355, 361 (2d Cir. 2008)). Thus, a court must examine whether or not the transactions "served as a conduit for the proceeds of the illegal transactions."

Section 1956 provides that: "[w]however, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of a specified unlawful activity…shall [be guilty of an offense]." 18 U.S.C. § 1956.

Under 18 U.S.C. § 1956(c)(4), "the term 'financial transaction' means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." The term "specified unlawful activity" would include the drug trafficking offenses outlined in the previous section. *See* 18 U.S.C. § 1956(c)(7)(A).

Section 1343 criminalizes anyone who "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses…causes to be transmitted by any means…in interstate or foreign commerce…for the

purpose of executing such scheme or artifice." To establish a violation of this statute, the Government must prove that there was: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of…wires to further the scheme." *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) (quoting *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *see In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 86 (2d Cir. 2016) ("In civil forfeiture proceedings, the Government bears the burden of showing by a preponderance of the evidence that the property at issue is subject to forfeiture" and "[t]o carry this burden it must show that the property is more likely than not forfeitable." (citing 18 U.S.C. § 983(c))). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c). "Once the government establishes that there is probable cause to believe that a nexus exists between the seized property and the predicate illegal activity, the burden shifts to the claimant to show by a preponderance of the evidence (1) that the defendant property was not in fact used unlawfully, *or* (2) that the predicate illegal activity was committed without the knowledge of the owner-claimant, that is, the claimant is an innocent owner." *In re Fifth Ave. & Related Props.*,777 F. Supp. 2d 529, 542 (S.D.N.Y. 2011) (quoting *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 104 (2d Cir. 2000)(emphasis in original). Accordingly, the Government must allege in their verified complaint "sufficiently detailed facts

to support a reasonable belief that the government will be able to meet its burden of proof at trial." Suppl. R. G(2)(f).

The Government alleges violations under 18 U.S.C. § 1343 and 18 U.S.C. § 1956. Compl. ¶ 1. For the purposes of forfeiture, the Government relies on 18 U.S.C. § 981(a), which states that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property" is subject to forfeiture to the United States. Compl. ¶ 4. More specifically, the Government alleges that the Defendant Assets are proceeds traceable to a wire fraud and money laundering scheme in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1956. Thus, the Government must provide facts supporting a reasonable belief that it could establish that there was a substantial connection between the Defendant Assets and the alleged violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1956.

The Court agrees that it has done so.

In this case, the Government provided evidence as to how a perpetrator fraudulently enticed multiple victims to engage in a "cryptocurrency investment opportunity," which turned out to be a scam. Compl. ¶¶ 8-14. This perpetrator convinced multiple victims, including the named victim, F.H., to send hundreds of thousands of dollars' worth of cryptocurrency to an investment platform. *Id*; Compl. ¶ 16. However, when F.H. tried to withdraw his funds from the investment platform, he received a message that his account was flagged for illegal activity due to his association with the perpetrator of the scheme. Compl. ¶ 13.

More specifically, the Government offers facts and evidence providing a basis for liability under both statutes.

To establish a violation of Section 1343, the Government must prove that there was: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of…wires to further the scheme." *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) (quoting *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004).

Here, the Government describes a scheme in which victims were fraudulently enticed to deposit money or cryptocurrency into an online investment platform, which appeared to be a legitimate cryptocurrency exchange. Compl. ¶ 8. The Government alleges that the perpetrator falsely represented that they were utilizing the platform themselves and that they were making substantial returns by using the platform. *Id.* ¶ 9. The evidence provided is sufficient to establish that there was a scheme to defraud. The perpetrator developed a scheme where they used misrepresentations to entice victims to use the investment platform and deposit their funds, and these misrepresentations of actual gains from the investment platform were material because they influenced the victims to deposit their own funds. *See cf. Carpenter v. United States*, 2026 U.S. Dist. LEXIS 183422 at *4 (D. Conn. Aug. 17, 2026) (court found that using developing a scheme and using misrepresentations to influence victims to act satisfied the first element, a scheme to defraud).

The second element, money or property as the object of the scheme, was also satisfied in the verified complaint. The Government alleges that "F.H. sent a total of 427,792 USDC from his Coinbase wallet to Wallet 0x231E, a value of $427,776.11 at the time of the transfer." Compl. ¶ 11. However, when F.H. later realized this was a scam and attempted to withdraw his funds, he was unable to do so. Similarly, they allege that law enforcement was able to trace similar fraudulent transactions due to "multiple complaints filed by multiple victims." *Id.* ¶ 16. At the time that the Government filed their motion for default judgment, the current balance of

cryptocurrency in the target wallet was 543,011 USDT. *Id.* ¶ 18. The Second Circuit has held that these statutes were designed to ensure that victims could control their own assets. *See United States v. Carlo*, 507 F.3d 799, 802 (2d Cir. 2007). "[C]ognizable harm occurs where the defendant's scheme 'den[ies] the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions.'" *United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015) (quoting *United States v. Rossomando*, 144 F.3d 197, 201 n.5 (2d Cir. 1998). Accordingly, the second element has been satisfied.

Third, the Government alleged sufficient facts to satisfy the third element. The Government alleged that F.H. sent cryptocurrency from his Coinbase wallet "to Wallet 0x231E." Compl. ¶ 11. And the Government alleged that "[l]aw enforcement performed a blockchain analysis and traced the funds to the Bitget Bridge, where the funds were then bridged to Tether ("USDT") on the Tron network ("TRX")." Compl. ¶ 15. They additionally traced transactions from other victims and provided transaction information, dates, and amounts. Compl. ¶¶ 16-19. This is sufficient, because Courts have held that in order to meet this element even if the perpetrator did not personally send the wires, it just needs to be "reasonably foreseeable that the charged transmission[s] would occur in the execution of the scheme." *United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016) (quoting *United States v. Bahel*, 662 F. 3d 610, 632 (2d Cir. 2011)).

Next, "[t]o establish money laundering under 18 U.S.C. § 1956, the Government must show that the perpetrators (1) conducted or attempted to conduct a financial transaction (2) that involved property that represented proceeds of unlawful activity (3) and that the perpetrators knew the property involved in the financial transaction represented proceeds of unlawful activity." *Approximately Five Hundred Forty-One Thousand Nine Hundred Fifty-Three Dollars*,

2025 U.S. Dist. LEXIS 23766 at * 12 (quoting Pattern Crim. Jury Instr. 6th Cir. 11.01 (2025)).

The Government has alleged sufficient facts to prove a violation under 18 U.S.C. § 1956.

First, the Government has alleged that multiple victims sent cryptocurrency from their own accounts to this fraudulent investment platform. Compl. ¶¶ 11-15. Second, the Second Circuit has held that "[w]ire fraud is a "specified unlawful activity" under 18 U.S.C. §§ 1956(c)(7)(A)." *United States v. Szur*, 289 F.3d 200, 213 (2d Cir. 2002). And finally, the perpetrator of the scheme controlled the financial transactions, so they reasonably knew that "the property involved…represented proceeds of unlawful activity." And the Government's verified complaint describes details of the series of transactions going from the various victims to the perpetrator's cryptocurrency wallet. Compl. ¶¶ 16-19.

Accordingly, based upon these uncontested allegations, the Government has successfully alleged facts establishing a substantial connection between the Defendant Assets and the alleged violations of 18 U.S.C. § 1343 and Under 18 U.S.C. § 1956.

## IV. CONCLUSION

For the foregoing reasons, the motion for default judgment is **GRANTED.** A separate default judgment order and decree of forfeiture shall follow this ruling.

**SO ORDERED** at New Haven, Connecticut, this 9th day of November, 2026.

*/s/ Victor A. Bolden*
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE